**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**NANCY J. COOL,**

      **Plaintiff,**

**v.**
                             **Civil Action No. 2:04-CV-25**
                                     **(Kaull)**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION / OPINION

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying

her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act

("Act"), 42 U.S.C. §§ 1381-1383f. The matter is awaiting decision on cross Motions for Summary

Judgment, and has been referred to the undersigned United States Magistrate Judge for submission

of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ.

P. 72(b).

## I. Procedural History

Nancy J. Cool ("Plaintiff") filed her current application for SSI on October 24, 2002, alleging

disability beginning October 1, 2002, due to learning disabilities (R. 62).[1]  The application was denied initially and on reconsideration (R. 35, 37).  Plaintiff requested a hearing, which Administrative Law Judge ("ALJ") Steven D. Slahta held on August 26, 2003 (R. 175).  Plaintiff, represented by counsel, testified on her own behalf, along with Vocational Expert Larry Ostrowski ("VE").  By decision dated September 5, 2003, the ALJ denied benefits (R. 28).  Plaintiff filed a request for review of the hearing decision, which was denied by the Appeals Council on March 10, 2004, rendering the ALJ's decision the final decision of the Commissioner (R. 6).

## II. Statement of Facts

Plaintiff was born on June 23, 1958,  and was 45 years old at the time of the Administrative Hearing (R. 175).  She completed the 8th grade, attending special education classes, and had some work training at a senior citizens center through the Department of Health and Human Services.  She otherwise has no work history (R. 63, 68).

Plaintiff received all C's and D's in first and second grade (R. 88).  She was retained in the second grade.  She still received all C's and D's the second year.  Plaintiff received four F's and four D's in the third grade, and was again held back.  Her second try she received all D's and C's, with the exception of a B in Music.  She received C's, D's, and one E (unsatisfactory) in fourth grade, all C's and D's with three E's in fifth grade, and all C's and D's with three E's in sixth grade.  She received all D's in the seventh grade, and all D's with an F in Math in the eighth grade.  She quit school after the eighth grade.

---

[1]Plaintiff filed previous applications for SSI in 1983 and 1988.  Both were denied and she did not appeal (R. 71).

Plaintiff scored an 85 IQ on the Otis-Lennon in second, a 78 on the Otis-Lennon in the third grade, and a 75 on the "STS" in the sixth grade (R. 88).

Plaintiff underwent a Psychological Evaluation at the request of the State agency on December 13, 2002 (R. 90). Dr. Sharon Joseph, Ph.D. performed a clinical interview, mental status evaluation, WAIS-III IQ test, and WRAT-3 Achievement Tests.

Plaintiff told Dr. Joseph she was in Learning Disabled classes in Math in grade school but not in junior high school. She quit school after the 8th grade, at age 16. She tried to get her GED, but was unable to pass the test.

Plaintiff reported she worked from January 2001 to June 2001 as a janitorial worker in a training program (R. 90). She had never been treated for a psychological or emotional problem (R. 91).[2] Plaintiff's scores on the IQ test were verbal 68, performance 86, and full scale 75 (R. 91). Dr. Joseph found the 18-point gap between the performance and verbal IQ was significant enough to suggest brain dysfunction. Plaintiff scored at the fifth grade level in reading, the fourth grade level in spelling, and the 6th grade level in arithmetic on the achievement tests. Dr. Joseph found these scores were relatively consistent with the full scale score on the IQ test.

Dr. Joseph noted the psychometrician who gave Plaintiff the tests, indicated Plaintiff did not put forth much effort. She believed the Plaintiff was unmotivated, working slowly, and sitting with her chin in her hand, as if bored, or with her arms folded across her chest. She sighed when given a new task. Dr. Joseph found the large gap between the verbal and performance IQ's could also be due to a lack of effort. Dr. Joseph therefore found she could not fully endorse the validity of the

---

[2]The undersigned notes an office visit in December 1997, where Plaintiff saw her treating physician for occasional feelings of lightheadedness, nervousness, and depression (R. 136). She was prescribed Paxil.

tests, and recommended testing be repeated at a later date, after educational records were obtained.

Dr. Joseph found Plaintiff's immediate memory was within normal limits, recent memory was moderately to markedly impaired and remote memory was mildly impaired (R. 92). Her concentration was mildly impaired and her judgment was moderately impaired.

Mental Status Examination showed Plaintiff to be alert, oriented, and cooperative. She reported difficulty sleeping, but no appetite disturbance. Her mood appeared depressed. Motor activity was somewhat nervous, and eye contact was average. Language was average, speed of speaking was normal, and content was relevant. Conduct during the interview was cooperative. Affect was flat and insight appeared fair.

Plaintiff reported making the bed, running the vacuum, washing dishes, cooking meals, and putting groceries away (R. 92). She could remember to turn off the stove. She shopped for groceries. She did not drive. She said she managed her own finances. She liked to go fishing. Socialization was considered to be within normal limits.

Dr. Joseph diagnosed Depressive Disorder, NOS, provisional, and "Rule out Borderline Intellectual Functioning (testing needs to be repeated)."

On January 7, 2003, State agency reviewing psychologist Joseph Kuzniar, Ph.D., completed a Mental Residual Functional Capacity Assessment, opining Plaintiff would be markedly limited in her ability to understand, remember, and carry out detailed instructions (R. 94). She was otherwise not limited or not significantly limited in any category. He concluded that Plaintiff retained the capacity to understand and remember simple, routine verbal instructions. She would perform better at non-verbal tasks. Her capacity to carry out instruction was at least at the same level. She had adequate social skills for that level of work and could manage a moderate level of work pressure (R.

96).

Dr. Kuzniar also completed a Psychiatric Review Technique ("PRT"), opining that Plaintiff had borderline intellectual functioning, but would have only mild restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace (R. 109).

Plaintiff underwent a second psychological evaluation, at the request of her attorneys, in August 2003 (R. 113). The evaluation was performed by Supervised Psychologist Brenda Hinkle, under the supervision of Licensed Psychologist Robert Klein, Ed.D.

Plaintiff obtained IQ scores of 69 Verbal, 84 Performance, and 74 full scale (R. 113). Achievement tests showed Plaintiff read at the high school level, spelled at the 5th grade level, and performed math at the 6th grade level (R. 114). Plaintiff said she was in Special Education in grade school. She passed the written portion of her driver's test after "a lot" of attempts over two years, but was never able to pass the driving portion.

Plaintiff told Ms. Hinkle she was sexually abused by both her brother and her father from the age of 6 to 15 (R. 115). She reported PTSD symptoms as a result. She reported feeling moderately depressed four days out of seven. She reported difficulty concentrating and maintaining attention and focusing. She reported feeling excessively guilty and extremely worthless, and reported suicidal ideations, although stating she would never attempt suicide. She said she never enjoyed activities. She reported having panic attacks starting several years ago, when she saw certain men, no man in particular. When she was "extremely down" she would see a dark shape of a person approximately twice a week.

Plaintiff reported doing all the cleaning at her home including washing dishes, mopping,

sweeping, laundry, and cooking. She could cook by reading recipes. She grocery shopped and could count and make change. She wrote checks and balanced her checkbook. She did not drive because she did not have a license. She reported being able to behave in an emotionally stable manner, but the psychologist found her emotional state at the evaluation suggested otherwise. She reported she could understand, remember, and carry out tasks that were not too complex.

Testing indicated Plaintiff's IQ was 69 verbal, 84 performance, and 74 full scale (R. 116). The psychologists found Plaintiff put forth good effort and no malingering was detected. The test resists were considered valid. The psychologist also noted the test scores were commensurate with the results of the test given by Dr. Joseph in December 2002 (68, 86, and 75).

Achievement tests indicated Plaintiff read at the high school level, spelled on the fifth grade level, and did math at the sixth grade level. Testing also showed Plaintiff's judgment was markedly deficient, immediate memory was moderately deficient, recent memory was markedly deficient, and remote memory was normal. Concentration was moderately deficient, and persistence and pace were normal. Psychomotor retardation was observed.

The Beck Depression Inventory indicated Plaintiff reported severe depressive symptoms, and the Beck Anxiety Inventory indicated she reported severe anxiety symptoms. Personality testing was considered invalid due to Plaintiff having answered questions in a manner considered as "presenting herself in an unfavorable light."

The psychologist also opined that Plaintiff's school records and the previous evaluation by Dr. Joseph supported the IQ test results, and supported a finding she functioned within the Mild Mentally Impaired to Borderline Intellectual functioning range throughout her life (R. 115-116). She also had moderate deficiencies in concentration and memory.

Ms. Hinkle diagnosed Plaintiff with Post Traumatic Stress Disorder, Chronic; Major

6

Depressive Disorder, Single Episode, Severe with Psychotic Features; Panic Disorder without Agoraphobia; and Borderline Intellectual Functioning (R. 117). The psychologist also noted that Plaintiff's never having sought treatment for PTSD, Major Depression or Panic Disorder was typical, given her cultural background. In fact, although she could state her symptoms, she was "unaware that her symptoms are abnormal and treatment is available that may assist with her problematic symptoms" (R. 118).

Dr. Klein and Ms. Hinkle completed a Mental Assessment of Ability to do Work-Related Activities (Mental), opining Plaintiff would have a "Poor" ability to use judgment, deal with work stresses, maintain attention/concentration, understand, remember, and carry out complex job instructions, and behave in an emotionally stable manner (R. 119-120). She would have a "Fair" ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, function independently, understand, remember and carry out detailed job instructions, and relate predictably in social situations. She would have a good ability to maintain personal appearance, demonstrate reliability, and understand, remember, and carry out simple job instructions.

At the Administrative Hearing on August 26, 2003, Plaintiff testified she had tried to obtain her GED but did not pass the test (R. 178). Although she had only tried the test once, she "went through the classes two or three different times." Her only work experience was when she was in a training program, working at the Senior Center (R. 179). She stopped working there when the training ended. She believed she could still do that job, but not all day long, because she got tired too easily. Plaintiff testified she used to write checks to pay the bills, but did not do that any longer. Now she would write a check for cash and pay all her bills with cash or money orders (R. 187). When asked why she did not simply write checks for her bills, she testified:

7

> Well, I did for a while. Then when I write checks out, it - - they wait so long to, to take them in, and by the time the end of the month comes around, then I don't have no money in the bank.

(R. 187). She had bounced checks and received notices from the bank, so she stopped writing individual checks to pay bills.

The ALJ asked the VE a hypothetical containing the following limitations: The individual could read and write; could perform unskilled, low stress work, with one-to-two steps, routine and repetitive tasks, primarily working with things rather than people; entry level (R. 199). The VE testified the hypothetical individual could perform the jobs of packer, with 66 jobs in the local economy, machine feeder, with 68 jobs in the local economy, and commercial cleaner, with 359 jobs in the local economy.

### New Evidence Submitted to the Appeals Council

On September 23, 2003, Plaintiff underwent an Adaptative Functioning Assessment by Dr. Klein and Ms. Hinkle, utilizing the Adaptive Behavior Assessment System ("ABAS"), completed by Plaintiff and her sister (R. 125-126). The ABAS was described by the psychologists as providing:

> a comprehensive assessment of the adaptive skills of individuals who are school-aged to adulthood. A primary purpose of the ABAS is the comprehensive, diagnostic assessment of individuals having difficulties with the daily adaptive skills necessary to function effectively in their environments, given the typical demands placed on individuals the same age.

Plaintiff's results on the ABAS indicated she was currently functioning at the 2nd percentile, described as being in the Extremely Low Range. In particular, her communication, functional academics, and leisure and social scores were in the Extremely Low range, while her community use, home living, health and safety, self-care, and delf-direction skills were in the borderline range. The psychologists found these scores were commensurate with Plaintiff's IQ scores (R. 126).

8

### III. Administrative Law Judge Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520 and 416.920, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR § 416.927).

6. The claimant has the following residual functional capacity: the claimant has the residual functional capacity to perform medium work. She must perform unskilled, entry level, low stress work, with one to two step routine, repetitive tasks, working primarily with things rather than people.

7. The claimant has no past relevant work (20 CFR § 416.965).

8. The claimant is a 'younger individual' (20 CFR § 416.963).

9. The claimant has 'a limited education' (20 CFR § 416.964).

10. The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 416.967).

11. Although the claimant's exertional limitations do not allow her to perform the full range of medium work, using Medical-Vocational Rule 203.25 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a packer, 66 regionally and 102,026 nationally; and a commercial cleaner, 359 regionally and 267,600 regionally [sic]. Furthermore the vocational expert testified that the above-cited jobs are consistent with the Dictionary of Occupational Titles (Social Security Ruling 00-4p).

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 CFR § 416.920(f)).

(R.27-28).

## IV. The Parties' Contentions

Plaintiff contends:

1.  The Commissioner's decision is not supported by substantial evidence, in light of new and material evidence to the Appeals Council.

2.  The ALJ erred by failing to properly account for Plaintiff's actual limitations in his RFC findings;

3.  The ALJ erred by affording improper weight to the opinion of Psychologist Joseph over Psychologist Hinkle, resulting in a Decision that is arbitrary and capricious.

4.  The ALJ erred by failing to perform an appropriate credibility analysis in accordance with SSR 96-7p; and

5.  The ALJ erred by failing to accept VE testimony that was supported by substantial evidence.

Defendant contends:

1.  The Appeals Council properly considered the new evidence and determined that it did not provide a basis for changing the ALJ's decision;

2.  The evidence supports the ALJ's finding that Plaintiff retained the physical and mental capacity to perform the representative unskilled, medium jobs that the VE identified;

3.  The ALJ properly afforded more weight to Dr. Joseph's evaluation that to that of psychologists Hinkle and Klein; and

4.  The ALJ's hypothetical questions to the VE is [sic] supported by substantial evidence.

For reasons of clarity and efficiency, the undersigned will discuss Plaintiff's first argument last in this Report and Recommendation.

## V. Discussion
### A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)*(quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit stated substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)(*quoting Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### B. RFC

Plaintiff argues the ALJ erred by failing to properly account for her actual limitations in his RFC findings. Defendant contends the evidence supports the ALJ's finding that Plaintiff retained the physical and mental capacity to perform the representative unskilled, medium jobs that the VE identified. Plaintiff in particular refers to limitations regarding concentration, persistence and pace. The ALJ found Plaintiff had "moderate limitations in her ability to maintain concentration, persistence, or pace" (R. 25). He then determined she could perform unskilled, entry level, low

stress work with one to two step routine, repetitive tasks, working primarily with things rather than people (R. 27). Plaintiff argues these limitations are not specific enough.

The Fourth Circuit has not squarely addressed this issue, although several other circuits have. In *Brachtel v. Apfel*, the Eighth Circuit held that a hypothetical including the ability "to do only simple routine repetitive work, which does not require close attention to detail [and] no[] work at more than a regular pace," was sufficient for a claimant who "often" exhibited limitations of concentration, persistence or pace. 132 F.3d 417 (8th Cir. 1997).

In addition, Dr. Kuzniar specifically opined Plaintiff could understand, remember, and carry out simple, routine verbal instructions, and could manage a moderate level of work pressure (R. 96). Further, Plaintiff herself reported she did well while working in the training program as a cleaning person five days a week, eight hours a day (R. 25).

The undersigned therefore finds substantial evidence supports the ALJ's RFC determination.


## C. Examining Psychologists' Opinions

Plaintiff next argues the ALJ erred by affording improper weight to the opinion of Psychologist Joseph over Psychologist Hinkle, resulting in a Decision that is arbitrary and capricious. Defendant contends the ALJ properly afforded more weight to Dr. Joseph's evaluation than to that of psychologists Hinkle and Klein. Insofar as the evaluations conflict, it is the ALJ's duty to resolve that conflict. As the Fourth Circuit stated in *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990):

> Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976) ("We note that it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in

the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."); _Blalock v. Richardson,_ 483 F.2d at 775 ("[T]he language of § 205(g) precludes a _de novo_ judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.' ").

The Regulations, however, do provide guidance regarding the evaluation of medical opinion evidence. 20 C.F.R. § 404.1527 states, in pertinent part:

> (d) _How we weigh medical opinions._ Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion
>
> > (1) _Examining relationship._ Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> . . . .
>
> > (3) _Supportability._ The more a medical source presents relevant evidence to support an opinion particularly medical signs and laboratory findings, the more weight we will give that opinion. . . .
>
> > (4) _Consistency._ Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

Here, both evaluations were performed by "examining" psychologists. The issue is therefore the supportability of each opinion and its consistency with the record as a whole. In particular, Dr. Joseph opined Plaintiff had only a mild impairment of concentration, whereas Ms. Hinkle, in the Medical Assessment of Ability to do Work-Related Activities (Mental) opined Plaintiff would have a "poor" ability to maintain attention/concentration (R. 119). Plaintiff especially questions whether Dr. Joseph's opinion was based on "some tangible instrument or just her own pure conjecture," as

opposed to Ms. Hinkle's opinion, which Plaintiff argues is "well explained and based upon objective testing instruments." Ms. Hinkle refers the reviewer to her evaluation of Plaintiff to support the limitations. In the evaluation report, however, Ms. Hinkle notes that the WAIS-III subtests indicated Plaintiff's concentration was only moderately deficient, her pace was within normal limits and her persistence was within normal limits (R. 116). The undersigned found no objective test that indicated Plaintiff had a poor ability to concentrate. In addition, the ALJ found Plaintiff's own abilities did not support the finding of "poor attention/concentration."

It is the duty of the ALJ to resolve conflicts in medical or psychological evaluations. The undersigned therefore finds substantial evidence supports the ALJ's determinations regarding the examining psychologists' opinions.

### D. Credibility

Plaintiff next argues the ALJ erred by failing to perform an appropriate credibility analysis in accordance with SSR 96-7p. The Fourth Circuit has held that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (*citing Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va.1976)). SSR 96=7p provides, in pertinent part:

In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any

other relevant evidence in the case records. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

Here the undersigned finds the ALJ considered all the above evidence. He particularly noted Plaintiff's activities of daily living and inconsistencies he noted in her statements. This consideration is proper under SSR 96-7p, which provides, in pertinent part:

> One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. The adjudicator must consider such factors as:
>
> > The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.
> >
> > The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e) and 416.913(e). The adjudicator must also look at statements the individual made to SSA at each prior step of the administrative review process and in connection with any concurrent claim or, when available, prior claims for disability benefits under titles II and XVI. Likewise, the case record may contain statements the individual made in connection with claims for other types of disability benefits, such as workers' compensation, benefits under programs of the Department of Veterans Affairs, or private insurance benefits. However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

15

The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.

The ALJ here compared Plaintiff's Daily Living Questionnaire, in which she reported spending one hour a day reading magazines, one hour a day reading newspapers, and four hours a day reading books, with her testimony at the hearing that she did not read newspapers or magazines, but just looked at the pictures. He also compared her psychological evaluation in December 2002, in which she denied suicidal ideation, hallucinations, and delusions, with the evaluation only eight months later, during which she reported suicidal ideation and hallucinations of several years duration. In addition, he noted that, despite having a medical card, Plaintiff never sought any psychiatric or psychological treatment for these serious problems.

The undersigned finds substantial evidence supports the ALJ's credibility finding in this case.

### E. Hypothetical to the VE

Plaintiff next argues the ALJ erred by failing to accept VE testimony that was supported by substantial evidence. In *Koonce v. Apfel*, (4th Cir 1999), the Court held that an ALJ has "great latitude in posing hypothetical questions" and need only include limitations that are supported by substantial evidence in the record. The undersigned has already found substantial evidence supports the ALJ's RFC finding limiting Plaintiff to unskilled, entry level, low stress work with one to two step routine, repetitive tasks, working primarily with things rather than people.

The undersigned therefore finds substantial evidence also supports the ALJ's hypothetical, containing those same limitations, to the VE.

## F. New Evidence Before the Appeals Council

Plaintiff also argues the Commissioner's decision is not supported by substantial evidence, in light of new and material evidence to the Appeals Council. Defendant contends the Appeals Council properly considered the new evidence and determined that it did not provide a basis for changing the ALJ's decision.

The sole issue in this regard is whether or not Plaintiff meets or equals Listing 12.05C, which provides:

> 12.05 *Mental Retardation:* mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
>> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>> . . . .
>>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;

The ALJ expressly found that Plaintiff had a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function" (R. 22). She therefore met part C of the Listing. The ALJ then found, however, that Plaintiff did not have "the requisite deficits in adaptive functioning to meet Listing 12.05." In support of this determination, he noted:

> The claimant lives independently with her husband and two children ages 12 and 13. The claimant has reported no situational stress, but has at numerous times reported that she is responsible for the entire household which entails: managing the money; paying the bills; shopping for her children's school clothes; shopping for groceries for the home; preparing meals for four people; keeping the house clean, and on schedule; coordinating activities; meeting with her children's school teachers; and

recreating with her family, including such recreational activities as going fishing, and going visiting (Exhibit 3E, 1F, 4F, and hearing testimony).

(R. 22).

Shortly after the ALJ's Decision, Plaintiff underwent an "Adaptive Functioning Assessment," upon referral by counsel (R. 125). The Assessment was completed by Psychologist Hinkle, as again supervised by licensed psychologist Dr. Klein. Ms. Hinkle administered the "Adaptive Behavior Assessment System – Adult Form" ("ABAS"), to both Plaintiff and her sister. Ms. Hinkle described the ABAS as follows:

> The ABAS provides a comprehensive assessment fo the adaptive skills of individuals who are school-aged to adulthood. A primary purpose of the ABAS is the comprehensive, diagnostic assessment of individuals having difficulties with the daily adaptive skills necessary to function effectively in their environments, given the typical demands placed on individuals the same age.

Ms. Hinkle found Plaintiff's was in the "Extremely Low range" in reference to her level of adaptive skills. Her Communication, Functional Academics, Leisure, and Social adaptive skills were "Extremely Low," while her Community Use, Home Living, Health and Safety, Self-Care, and Self-Direction adaptive skills were in the "Borderline" range.

Ms. Hinkle found the results of the ABAS were commensurate with Plaintiff's level of intellectual functioning (R. 126).

Plaintiff submitted this report to the Appeals Council as new evidence. In March 2004, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision, stating only:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.

> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(R. 6-7). The Appeals Council listed the ABAS report and Plaintiff's counsel's argument, and also

had both included in the record.

In *Wilkins v. Secretary*, 953 F.2d 93 (4th Cir. 1991), the Fourth Circuit determined that the Appeals Council *will consider* evidence submitted to it if the evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.  *Wilkins* further defined the terms "new" and "material" as follows:

> Evidence is new . . . if it is not duplicative or cumulative . . . . Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.

*Id.* at 96.

The undersigned finds the ABAS report is "new" and relates to the period at issue. The undersigned also finds "there is a reasonable possibility that the new evidence could have changed" the ALJ's determination. The ALJ expressly noted Plaintiff did not have the requisite deficits in adaptive functioning to meet the Listing. The ABAS report alleges Plaintiff is in the borderline to extremely low range of adaptive functioning in every area. The fact that the Appeals Council claims to have considered the report and included it in the transcript further supports a finding that the evidence was new and material.

Plaintiff argues "if the Appeals Council ostensibly considers the new, 'interim' evidence in denying review of a claim, it is incumbent on the Appeals Council to give some reasons for finding that the 'interim' evidence does not justify further administrative action." (Quoting *Alexander v. Apfel*, 14 F.Supp. 2d 839 (W.D.Va. 1998). Plaintiff correctly notes, however, that the undersigned has declined to adopt the holding in *Alexander*. The undersigned recognizes this issue has generated conflicting opinions in the District Courts of the Fourth Circuit. First, the regulations do not require the Appeals Council to state its rationale for denying review. *See* 20 C.F.R. § 404.970(b). Second,

*Alexander* is of questionable precedential value, as it is a decision from another district, the Western District of Virginia. Third, in an unpublished opinion decided *after Alexander*, the Fourth Circuit specifically rejected the contention that the Appeals Council must articulate its own assessment of the additional information. *See Hollar v. Commissioner of Social Security*, 194 F.3d 1304 (4th Cir. 1999)(unpublished), *cert. denied*, 120 S. Ct. 2228 (2000) (*citing Browning v. Sullivan*, 958 F. 2d 817 (8th Cir. 1992), 20 C.F.R. § 404.970(b)). *cf., Harmon v. Apfel*, 103 F. Supp. 2d 869 (D.S.C. 2000) (court declined to follow *Hollar* and instead required the Appeals Council to articulate its reasoning in declining review where new evidence was submitted.). Finally, a subsequent decision in the Western District of Virginia concluded the exact opposite of the magistrate judge in *Alexander*. In *Ridings v. Apfel*, 76 F. Supp. 2d 707 (W.D. Va. 1999), which was decided *after Alexander*, District Judge Jones held that the Appeals Council was *not* required to state its reasons for finding that the new evidence did not justify review of the ALJ's decision. Judge Jones expressly disagreed with the magistrate judge's reasoning that the Appeals Council must give a detailed assessment of its failure to grant review in the face of new evidence, citing *Hollar*.[3]

Judge Jones then affirmed the magistrate judge's recommendation that Ridings' claim be remanded to the Commissioner, because "substantial evidence [did] not support the ALJ's decision, *when reviewed along with [the new evidence]*." *Id.* at 709. In other words, the Court reviewed the new evidence along with the evidence submitted to the ALJ, in making its decision. Plaintiff argues "The Court should never be placed in the position of having to be the first body to adjudicate new evidence while also providing judicial review in the same case." (Plaintiff's brief at 9.) This is,

---

[3]Judge Jones did cite *Alexander* in a footnote, stating: "At least one other magistrate judge of this district has held that the Appeals Council must articulate some reason for finding that the new evidence does not justify review." *Id.* at n.6.

however, exactly the manner in which the Fourth Circuit decided *Wilkins, supra*:

> Because the Appeals Council denied review, the decision of the ALJ became the final decision of the Secretary. "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." The Appeals Council specifically incorporated [the new evidence] into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

*Wilkins v. Secretary*, 953 F.2d at 96 (internal citations omitted). Therefore, where the Appeals Council considered the new evidence and included it in the record, but denied review, the Fourth Circuit holds that the reviewing court should consider the record as a whole, including the new evidence, in order to determine whether the ALJ's decision is supported by substantial evidence.

In this case, the ALJ determined Plaintiff did not meet or equal Listing 12.05C solely because she did not have "the requisite deficits in adaptive functioning" The ALJ did explain this finding by noting that Plaintiff lived independently with her husband and two children ages 12 and 13; reported that she was responsible for the entire household; managed the money; paid bills; shopped for her children's clothing; shopped for groceries; prepared meals; kept the house clean and on schedule; coordinated activities; met with her children's teachers; and went fishing and visiting with her family. The undersigned must agree with Plaintiff that the ability to perform some of these activities, such as visiting relatives, fishing with one's family, and living independently, is hardly dispositive regarding the issue of adaptive functioning. On the other hand, ability to manage money and pay bills is, as Defendant argues, evidence that Plaintiff does not have the requisite deficits of adaptive functioning. Plaintiff, however, explained at the hearing that the procedure she used to pay the bills was that she wrote one check, took it to the bank and got cash, and then paid the bills either with cash or with money orders. When asked as an example, why she didn't just write a check to

the electric company, she testified:

> Well, I did for a while. Then when I write checks out, it - - they wait so long to, to take them in, and by the time the end of the month comes around, then I don't have no money in the bank.

Because the payees "waited so long" to cash the checks, she bounced checks and got letters from the bank stating she did not have the funds to cover checks.

The new evidence is from an examining psychologist, and indicates Plaintiff is functioning at a borderline to extremely low level. There is no persuasive evidence from another examining or treating physician or psychologist that is contrary to that evidence. The undersigned therefore concludes that the ALJ's finding that Plaintiff did not have deficits of adaptive functioning, and therefore did not meet Listing 12.05C, is not supported by substantial evidence.

By this conclusion, the undersigned does not find that Plaintiff does meet the Listing or is disabled. As the Fourth Circuit held in *Wilkins*, however, the undersigned recommends the Commissioner's decision here be reversed and remanded for further proceedings consistent with this Report and Recommendation.


## VI. Recommendation

For the reasons herein stated, I find substantial evidence does not support the Commissioner's decision denying the Plaintiff's application for SSI. I accordingly recommend Defendant's Motion for Summary Judgment be **DENIED**, and Plaintiff's Motion for Summary Judgment be **GRANTED in part,** by reversing the Commissioner's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for further proceedings consistent and in accord with this Recommendation.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *Thomas v. Arn*, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail an authenticated copy of this Report and Recommendation to counsel of record.

Respectfully submitted this **22** day of July, 2005.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE